UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON


KATHERN DAWSON,                    )
                                   )
        Plaintiff,                 )            Civil No. 12-153-GFVT
                                   )
V.                                 )
                                   )
MICHAEL J. ASTRUE[1],              )         **MEMORANDUM OPINION**
Commissioner of Social Security,   )                  **&**
                                   )              **ORDER**
        Defendant.                 )
                                   )


*** *** *** ***

The plaintiff, Kathern Dawson, seeks judicial review pursuant to 42 U.S.C. §§

405(g) and 1383(c), of an administrative decision of the Commissioner of Social Security

("Commissioner") denying her application for Disability Insurance Benefits ("DIB").

The Court, having reviewed the record and for the reasons stated herein, will deny

Dawson's Motion for Summary Judgment [R. 10], and grant that of the Commissioner

[R. 11].

# I

Dawson alleges disability, beginning December 31, 2008, due to spinal fusion,

herniated discs, nerve damage in her spine, carpal tunnel syndrome in the right arm and

ulnar neuropathy. [Transcript ("Tr.") 178, 213.] She protectively filed her application

for DIB on April 23, 2010. [Tr. 178] Her application was initially denied on August 6

[Tr. 114] and again upon reconsideration on August 31 [Tr. 129]. An Administrative

_____
[1] Carolyn W. Colvin became the acting commissioner on February 14, 2013.

hearing was conducted before Administrative Law Judge ("ALJ") Don C. Paris on April 5, 2011. [Tr. 62-112.] At this hearing, Vocational Expert ("VE") Martha Goss appeared as a witness. [Tr. 107-112.] On April 14, ALJ Paris issued a decision denying DIB to Dawson. [Tr. 40-61.] Dawson, who was 37 years old at the time of the hearing, has a high school education and past relevant work experience as a production assembler, packer, sewing machine operator, machine tender, grinder and housecleaner. [Tr. 69, 73, 55.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. See 20 C.F.R. 416.920. First, if a claimant is working at a substantial gainful activity, they are not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant does not have a severe impairment, they are not disabled. 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix I, they are disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent them from performing past relevant work, they are not disabled. 20 C.F.R. § 416.920(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education and past work) prevent them from performing other work that exists in the national economy, then they are disabled. 20 C.F.R. § 416.1520(f).

In this action, at Step 1, the ALJ found that Dawson had not engaged in substantial gainful activity since the alleged onset date of December 31, 2008. [Tr. 45.] At Step 2, the ALJ found that as of the DLI, Dawson suffered from the following severe impairments: "degenerative disc disease of the lumbar spine with chronic low back pain, degenerative disc disease of the cervical spine status post fusion at C5-C6, peripheral

neuropathy, carpal tunnel syndrome right hand, borderline intellectual functioning v. mild mental retardation, and obesity." [Tr. 45.] At Step 3, the ALJ found that Dawson does "not have an impairment or combination of impairments that meet or medically equals one of the listed impairments" in the regulations. [Tr. 46-50.] At Step 4, the ALJ determined that Dawson possessed the residual functional capacity ("RFC") to perform a restricted range of light level work but could not return to her past relevant work as a packer, sewing machine operator, machine tender or grinder. [Tr. 50-55.] At Step 5, the burden of coming forward with evidence shifted to the Commissioner to identify a significant number of other jobs in the economy Dawson could perform. *Jones*, 336 F.3d at 474. The ALJ concluded that there were a significant number of jobs in the economy Dawson could perform based on the testimony of the VE. [Tr. 56.] Accordingly, on April 14, 2011, the ALJ issued an unfavorable decision, finding that Dawson was not disabled, and therefore, not eligible for DIB. [Tr. 43.] The Appeals Council found no reason for review on May 30, 2012 [Tr. 1-6] and Dawson now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard is deferential as it "presupposes that there is a zone of choice within which decision makers can go either

way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Dawson raises three arguments on appeal to this Court. First, she argues that the ALJ improperly considered her physical limitations when he discounted the opinions of a treating-physician, Dr. Phillip Tibbs, and failed to provide "good reasons" for not accepting his opinion. [R. 10 at 6-11.] She also argues the ALJ improperly considered the opinions of Dr. Haziq. Second, Dawson asserts that ALJ improperly considered her mental limitations when he discounted the opinion of Dr. Karen Saylor. [R. 10 at 11-12.] Finally, Dawson argues that the RFC is not supported by substantial evidence. [R. 10 at 15.]

## A

Dawson's first argues that ALJ Paris failed to properly consider the medical evidence demonstrating her physical limitations. [R. 10 at 3.] As Dawson's treating neurosurgeon, Dr. Tibbs' opinion on the issues of the nature and severity of Dawson's impairments is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2))[2]. If the treating source's opinion is not given controlling weight then the ALJ is required to consider the following factors in deciding exactly how much weight is to be given to the opinion: length of the treatment relationship as well as the frequency of examinations, the nature and extent of the treatment relationship, the supportability of the medical opinion, the consistency of the opinion and the degree of specialization of the treating source. 20 C.F.R. § 404.1527(c)(2)(i-ii), (c)(3-6); *Turner v. Comm'r of Soc. Sec.*, 267 F. App'x 456, 460 (6th Cir. 2008); *Wilson,* 378 F.3d at 544. The ALJ is required to give "good reasons" for not giving weight to opinions from the treating physician in a disability determination. 20 C.F.R. § 404.1527(c)(2). The purpose of this requirement is to "let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013).

In a letter dated December 10, 2009, Dr. Tibbs expresses his support for finding Dawson disabled, stating "We do support her in her application for Disability and believe that she would not be able to sustain herself with any viable employment given her symptoms, history, and education, and work history." [Tr. 306.] Dr. Tibbs provides some explanation for his recommendation that Dawson be declared disabled, stating that "She reports she is having some increased pain in the right arm with numbness." [*Id.*] Further, Dr. Tibbs explains that "She had a Tinel's at the wrist and elbow" and that a "MRI of the cervical spine showed degenerative disc disease, but there did not appear to

---

[2] This cited provision is now located at 20 C.F.R. § 404.1527(c)(2).

be any new neural impingement." [Tr. 306.] Dr. Tibbs further posits, "I suspect a lot of her symptoms are both myofascial[3] and could be nerve compression at the wrist or elbow." [Tr. 306.] Dawson argues that, because of Dr. Tibbs' stance on ultimate disability, the ALJ did not properly consider his medical evidence and opinions. [R. 10.]

As an initial matter, Dr. Tibbs' endorsement of Dawson's disability claim cannot be considered a medical opinion, but is instead a determination of disability, which is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *Gaskin v. Comm'r of Soc. Sec.,* 280 F. App'x 472, 474 (6th Cir. 2008); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (citing 20 C.F.R. § 404.1527(e)(1))[4]. This point is, at least to some degree, conceded by Dawson. [R. 10 at 9 ("While Tibbs' opinion on ultimate disability may not be binding on the ALJ…").] Because this decision is reserved to the Commissioner, "no special significance will be given to opinions of disability, even if they come from a treating physician." *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (citing 20 C.F.R. § 404.1527(e)(3) (2006); SSR96–5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed.Reg. 34471, 34473 (Soc. Sec. Admin. July 2, 1996)) (internal quotes omitted). Nevertheless, the ALJ must still "explain the consideration given to the treating source's opinion(s)." *Id.* (citing SSR96–5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed.Reg. at 34474). After considering Dr. Tibbs' medical opinions, ALJ Paris ultimately concluded that "Dr. Tibbs' opinion of disability cannot be adopted." [Tr. 54.] Unlike the ALJ in *Wilson*, however, ALJ Paris sufficiently justified his decision.

---

[3] Generally speaking, the term *myofascial* refers to pain in the body's soft tissue or muscles
[4] This cited provision is now found at 20 C.F.R. § 404.1527(d)(1).

ALJ Paris' critique of Tibbs' treatment primarily addresses the supportability and consistency factors provided in 20 C.F.R. § 404.1527(c)(2)(i-ii), (c)(3-6). ALJ Paris explained that he believed Dr. Tibbs' course of treatment to be "inconsistent with his opinion of disability and the course of treatment one would expect if the claimant were truly disabled." [Tr. 54.] Specifically, ALJ Paris noted that Dr. Tibbs recommended "anterior cervical discectomy and fusion in March 2008" [Tr. 54 (citing Tr. 366, 389)] but then found that Dawson's "strength has returned to near normal" and that "her pain is much better" with the exception of "a little myofascial component" on June 2, 2008. [Tr. 52 (citing Tr. 396).] In December 2009, Dr. Tibbs' provided "that no additional surgery was warranted and that the claimant's symptoms were likely myofascial."[5] [Tr. 54 (citing Tr. 293, 306).] These opinions are inconsistent with Tibbs' ultimate recommendation that Dawson be found disabled and the "course of treatment that one would expect if the claimant were truly disabled." See *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011) ("modest treatment regimen…was inconsistent with a finding of total disability".)

Due to the inconsistent and unsupported nature of Dr. Tibbs' opinion, ALJ Paris was justified in according little weight to Dr. Tibbs as Dawson's treating neurosurgeon. Further, ALJ Paris' explanation is sufficiently detailed to enable Dawson to understand why her treating physician's opinion was granted little weight and also to permit judicial review. *Wilson,* 378 F.3d at 544; *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th

---

[5] Dawson explicitly complains that the ALJ "downplays the impact of the record by noting that the symptoms are myofascial." [R. 10 at 9.] The Court notes, however, that the ALJ's comments do not trivialize any symptoms for being myofascial. Rather, the ALJ appears to recite comments made by Dr. Tibbs' in his December 2009 letter. [Tr. 306.]

Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006).

Dawson further argues that the ALJ improperly discounted the opinion of Dr. Haziq, whose opinion she believes supported that of Dr. Tibbs. [R. 10 at 10.] Haziq performed a consultative examination on Dawson on July 22, 2010. [Tr. 309-314.] Preliminarily, the commissioner argues that Dr. Haziq's findings do not constitute a medical opinion.

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a). According to the commissioner, Dr. Haziq's report includes objective findings but does not "indicate Dr. Haziq's judgments about the nature and severity of Plaintiff's impairments or what she can do despite the impairments." [R. 11 at 5.] Addressing this issue is ultimately unnecessary because, even if Haziq's findings are considered medical opinions as defined by 20 C.F.R. § 404.1527(a)(2), ALJ Paris did not err in discounting that opinion as he provided sufficient justification for his decision.

ALJ Paris discounted Haziq's opinion because "[t]he record contains no objective imaging or any treatment of the claimant's back pain commensurate with the findings of Dr. Haziq." [Tr. 53.] Based on this finding, Dawson claims that Dr. Haziq's findings are given no consideration. [R. 10 at 11.] Dawson looks to Dr. Haziq's final summary as evidence of what she believes should have been given more deference:

> Physical examination revealed the claimant to be tight and braced in the neck and keeping her right arm close to the body. The claimant appeared uncomfortable as she kept shifting in her seat. The claimant had a slow, cautious, and antalgic gait. The claimant had difficulty walking on the heels and toes, performing tandem gait, and squatting. There was pain and tenderness, paravertebral muscular and trapezius spasm in the neck extending from C4 to T6 with moderate limitation of movements of the

cervical spine. There was painful movements of the right shoulder. There were paresthesias on the back of the right shoulder. There were decreased sensations in the right upper extremity, worse distally. There was grade four weakness of the right arm, forearm and right hand. The claimant had an inability to make a complete fist with the right hand. The claimant had difficulty picking up coins and maneuvering buttons with the right hand. Grip strength was 6 kg of force on the right compared to 16kg on the left. There was pain and tenderness in the lumbar back with moderate limitation of movements of the lumbar spine. Straight leg raise test was to 60 degrees on the right and 80 degrees in the supine and sitting positions. There was grade five weakness of the muscles of the right lower extremity.

[Tr. 313-314]. Dawson is wrong in claiming Haziq's opinions were given no weight.

For a number of reasons, the Court finds Dawson's complaint without merit and ALJ Paris' decision supported by substantial evidence. First, contrary to Dawson's representations, the ALJ did consider, and incorporate, many of Haziq's findings. ALJ Paris evaluated Dr. Haziq's findings in the context of complaints about both Dawson's upper extremities and her back. [Tr. 52-53.] With regard to Dawson's upper extremities, the ALJ considered Dr. Haziq's findings that Dawson "had difficulty making a complete fist, picking up coins, or maneuvering buttons" with her right hand. [Tr. 52; Tr. 312.] On the basis of this opinion, and an October 2009 nerve conduction study, ALJ Paris limited Dawson's RFC, finding that:

the claimant should not more than frequently push/pull or use hand controls with right upper extremity; never climb ladders/ropes/scaffolds; only occasionally reach overhead with right upper extremity; perform no sustained work activity above head level; no more than frequently handle or finger with dominant right hand; and avoid concentrated exposure to full vibration or use of vibratory hand tools with the right hand.

[Tr. 52.] Dawson complaint, however, is more likely directed at the ALJ's decision to discount Haziqs' opinions regarding Dawson's lumbar spine.

Second, ALJ Paris justified his decision to ultimately discount Dr. Haziq's findings regarding Dawson's lumbar spine, from the July 2010 consultative examination. The ALJ considered the contents of Dr. Haziq's report and concluded that the severity

documented by Dr. Haziq was not supported by other evidence. [Tr. 53.] Dr. Haziq found Dawson is able to "stand unassisted and is able to rise from a seat and step up and down from the examination table" and does not did not require "assistive devices or ambulatory aids." [Tr. 46, 311.] Further, ALJ Paris notes that Jennifer Wilke-Deaton, M.A., noted in her report that Dawson's "gait and posture were normal." [Tr. 46-47 (citing Tr. 397).] ALJ Paris refers to x-rays taken in December, 2010 that evaluated Dawson's low back/lumbar spine and "revealed multifocal/multi compartmental degenerative changes with no acute musculoskeletal radiographical findings." [Tr. 53; Tr. 382.] Further, the Commissioner points out that the absence of references to lower back pain in the treatment notes from Dawson's most recent medical visits support the ALJ's conclusion that Dawson's back pain is less severe than she suggests. [R. 11 (citing Tr. 291 (Mar. 24, 2010. Rockcastle Med. Arts), 355-358 (Sept., Oct., & Dec., 2010, Rockcastle Med. Arts), 378 (Dec. 22, 2010, ER Treatment Notes), 387-388 (Feb. and Mar. 2011, Rockcastle Med. Arts), 402-403 (Mar. 22, 2011, notes from Ky. Orthopedic & Hand Surgeons), 408-409 (Mar. 23, 2011, treatment notes from M.L.F. Knuckles, P.S.C.).] Finally, despite not finding any objective imaging or treatment that was consistent with Dr. Haziq's findings regarding severity, ALJ Paris still placed significant limitations on Dawson's residual functional capacity as it relates to her lumbar spine. [Tr. 53.] After reviewing the ALJ's opinion, it is apparent that he did consider the opinions of Dr. Haziq, however, discounted them to the extent that he found them unsupported by other evidence in the record.

**B**

Dawson also argues that ALJ Paris failed to properly consider her mental

limitations as he failed to adopt the opinion of Dr. Karen Saylor, who had been treating

Dawson since December 2008.  [R. 10 at 11.]  As explained, *supra* II A, 20 C.F.R. §

404.1527(c)(2) provides that a treating source's opinion on the issues of the nature and

severity of a claimant's impairments be given controlling weight only if it is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques" and is

"not inconsistent with other substantial evidence in [the] case record."  *Wilson,* 378 F.3d

at 544 (quoting 20 C.F.R. § 404.1527(d)(2))[6].  To the extent that the treating physicians'

opinion is not given controlling weight, the ALJ is required to give "good reasons" for

not giving weight to opinions from the treating physician in a disability determination.

20 C.F.R. § 404.1527(c)(2).

Dr. Saylor completed a Mental Source Statement on February 21, 2011, in which

she attributed the following limitations to Dawson:

> Moderate limitation to understand and remember simple instructions; Moderate
> limitation of the ability to make judgments on simple work-related decisions; Marked
> limitation to understand and remember complex instructions; Marked limitation to
> carry out complex instructions; Marked limitations in the ability to make judgments
> on complex work related decisions; Moderate limitation on ability to interact with
> supervisor(s); Moderate limitations on her ability to interact appropriately with co-
> workers; Marked limitation on ability to respond appropriately to usual work
> situations and to changes in a routine work setting.

[Tr. 405-407.]  ALJ Paris discounted the above opinions of Dr. Saylor for two reasons.

First, ALJ Paris gave "little weight" to Dr. Saylor's mental health opinions

because she "is the claimaint's primary care physician."  [Tr. 55.]  The Commissioner

argues this is reasonable because Dr. Saylor is not a mental health expert but was being

_____

[6] See FN2.

asked to issue an opinion on exactly that.  [R. 11 at 7.]  The regulations speak directly to this issue.

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.  For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(c)(2)(ii).  Furthermore, the regulations provide that the SSA "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(5).  See *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 115 (6th Cir. 2010) (Concluding that ALJ's comment that Doctor's opinions about claimant's mental functioning "are outside his area of expertise" was an "inartful attempt" to address the factor addressing specialization); See also *McCawley v. Astrue*, 423 F. App'x 687, 689 (9th Cir. 2011) (ALJ gave specific and legitimate reasons for partially discounting Doctor's opinion about claimants limitations, specifically noting that Doctor was "opining outside her area of specialization.")

Second, ALJ Paris questions the supportability of Dr. Saylor's opinion.  [Tr. 55.] See 20 C.F.R. § 404.1527(c)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Dr. Saylor identified Dawson's "chronic pain, chronic use of pain medication, as well as her poor

school performance and education level" as the factors supporting her above referenced assessment. [Tr. 55 (referring to Tr. 405).] ALJ Paris noted that Dr. Saylor had treated Dawson's depression with medication but had not addressed her "poor school performance and education level." [Tr. 55.] The Commissioner argues that, because Dr. Saylor identified "poor school performance and education level" as a basis for her opinion, whether or not she treated on these factors is relevant to supportability. [R. 11 at 7.] See 20 C.F.R. § 404.1527(c)(3). This Court agrees that Dr. Saylor's claims are properly discounted as they lack support and are inconsistent other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(3); 20 C.F.R. § 404.1527.

Furthermore, ALJ Paris noted that Dawson failed to convey, either in the hearing or to her doctors, the severity of the side effects she experiences as a result of the medicines she takes. [Tr. 55.] The ALJ reasoned that the absence of such indication from Dawson undermines Dr. Saylor's opinion that the "chronic use of pain medication" supports her assessment. [Tr. 405.] The regulations recognize that a medical opinion's consistency with the "record as a whole" is one of the factors to be considered in evaluating the weight of medical opinions. See 20 C.F.R. § 404.1527(c)(4).

Due to Dr. Salyer's lack of specialization, the unsupportability of her opinion, and the opinion's inconsistency with the record as a whole, ALJ Paris was justified in according little weight to Dr. Saylor's opinion. Further, ALJ Paris' explanation is sufficiently detailed to enable Dawson to understand why her treating physician's opinion was granted little weight and also to permit judicial review. *Wilson,* 378 F.3d at 544 ; *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006).

Dawson also attributes error to ALJ Paris' handling of the report of Wilke-Deaton, the consultative examiner. [R. 10 at 12.] In that report, Wilke-Deaton found:

> The claimant's ability to understand, remember, and follow through with simple instructions appeared markedly impaired. During the evaluation, she required frequent repetition, clarification, and rewording of questions and directions. In spite of this assistance, she appeared to have ongoing difficulty with verbal comprehension. She reported requiring assistance from her husband with written information; The claimant's mental ability to sustain attention and persistence appeared moderately impaired. Ms. Dawson denied having difficulty maintaining task-orientation to activities in the home, but was observed to have lethargic responsiveness and slow pace throughout the evaluation. She reported having difficulty comprehending information and following through in the workplace without assistance from others."

[Tr. 397-401.] Dawson argues that the ALJ adopted the findings of Wilke-Deaton when convenient and dismissed them when they were supportive of disability. [R. 10 at 14 (referring to Tr. 54.)] The ALJ explained that he gave little weight to the opinions of Wilke-Deaton "as it relates to the claimant's ability to understand, remember, and follow through with simple instructions as it is inconsistent with the claimants' work history." [Tr. 54.] ALJ Paris noted that Dawson had worked at least four jobs and had not expressed difficulty in being able to perform requisite tasks. [Tr. 49 (referring to Tr. 398).] Dawson worked "8 years packing boxes and completing janitorial tasks in a plastic factory," "2 years in a setting waistbands in a sewing factory," "9 months making sandwiches at Wendy's, "9 months through Kelly Temporary Services at a factory," "another factory job" and also working in tobacco. [Tr. 398.] Dawson provided reasons for leaving all of these jobs but not once was it because she could not perform the required work. Rather, she left positions to make more money or because she moved or wanted to live closer to home. [*Id.*]

The ALJ was more deferential to the opinions of Wilke-Deaton as they related to Dawson's ability to "sustain attention and concentration" and to "relate with others and

adapt or respond to pressures associated with day-to-day changes." [Tr. 54.] The ALJ explained that these opinions were supported by both Wilke-Deaton's notes and the evidence in the record from Dawson. [*Id.*]

Finally, Dawson argues that the ALJ's tendency to "pick and choose" which evidence he likes is further demonstrated by his decision to give significant weight to the state agency psychological consultant's assessment. [R. 10 at 11; Tr. 325-338.] Lea Perrit, Ph.D., conducted the psychological consultant's assessment to which Dawson refers. [Tr. 235-338.] Dawson argues Perrit erred when she concluded that Dawson's depression does not result in a severe impairment, despite Perrit's failure to assess Dawson's limited mental capacity. [R. 10 at 14.] As noted by the Commissioner, Perrit's finding that Dawson's depression does not cause a severe impairment is not inconsistent with the opinions of either Dr. Saylor or Wilke-Deaton as neither identified limitations related to Dawson's depression. [R. 11 at 9 (citing Tr. 55, 325 & 335 (Perrit's Psychiatric Review), 400-401 (Medical Source Statement of Wilke-Deaton), 405-407 (Medical Source Statement of Saylor).)] Perrit's failure to assess Dawson's limitations caused by limited intellect have no bearing with regard to the above opinion regarding depression.

## C

Dawson argues the RFC, which consists of the ALJ's finding about what work the claimant may still perform, despite limitations, is not supported by substantial evidence. [R. 10 at 15 (referring to RFC at Tr. 50).]; 20 C.F.R. § 416.945. The RFC assessment is "based on all the relevant evidence" in the case record. *Id.* Specifically, ALJs consider

the claimant's "ability to meet the physical, mental, sensory, and other requirements of work" when determining a claimant's RFC.  20 C.F.R. § 416.945.

Dawson argues that the RFC is not supported by substantial evidence on three grounds.  First, she contends that the physical limitations imposed "parrot" the non-examining physicians report of Cindy Caldwell.  [Tr. 317-324.]  She argues that these limitations are contrary to the opinions of Dr. Tibbs and Dr. Haziq, and are not supported by substantial evidence.  [R. 10 at 16.]  Second, Dawson states in a perfunctory fashion that the "source for the mental RFC assigned was a flawed report of a reviewing doctor." [*Id*.]  The Court has already addressed the allegedly flawed report of Dr. Lea Perrit and found the ALJ's conclusions regarding Dawson's mental limitations supported by substantial evidence.[7]  These concerns need not be addressed again at this time.  Third, Dawson believes her subjective complaints were not fairly considered.  [R. 10 at 16-17.]

**1**

ALJ Paris imposed physical limitations that the commissioner concedes are "admittedly consistent" with those of non-examining physician Caldwell.  [R. 11 at 10.] Nonetheless, the Commissioner argues this is not error because the ALJ did not "assign weight to that opinion and there is no error in considering such evidence."  [R. 11 at 10.] In support of this proposition, they refer to the governing regulatory framework.  [R. 11 at 10 (citing See 20 C.F.R. §§ 404.1513(d), 404.1520(a)(3), 404.1520b, 404.1545(a)(3)).] The citations provided by the Commissioner demonstrate the regulations inclusive approach in providing ALJ's with broad authority to consider evidence which they determine to be helpful in making their decision.  In 20 C.F.R. § 404.1513, the

---

[7] The alleged "flaw" regarding Lea Perrit's report is that she did not assess the Dawson's "limitations caused by her limited intellectual functioning, discussed *supra* p. 14.

Commissioner explains to claimants that they may consult, in addition to medical sources, "other sources to show the severity of your impairment(s) and how it effects your ability to work." Such "other sources" that are explicitly identified include nurse-practitioners, physicians' assistants, chiropractors, educational personnel, public and private social welfare personnel and non-medical sources. *Id*. See also 20 C.F.R. § 404.1520 ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.); 20 C.F.R. § 404.1545 ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.")

Dawson argues that these limitations are improper, especially as they are contrary to the opinions of Dr. Tibbs and Dr. Haziq. [R. 10 at 16.] Preliminarily, to the extent that Dawson's concern is about the weight given to the testimony of both Dr. Tibbs and Dr. Haziq, these concerns have already been addressed, *supra*. Furthermore, the Sixth Circuit has recognized that " 'in appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.' " *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96–6p, 1996 WL 374180 (1996)).

To the extent that Dawson argues that the ALJ's RFC is not supported by substantial evidence, the Commissioner puts this argument to rest in her brief:

> …[E]vidence in the record supported the ALJ's RFC assessment such as Dr. Tibbs' finding that after surgery, Plaintiff's strength returned to near normal and her pain improved (Tr. 52, 396). Also, after her surgery she received medications, but underwent no additional intensive treatment for her neck condition and an MRI revealed degenerative disc disease, but no neural impingement and surgery was not recommended (Tr. 52, 291-296, 300, 302, 306). Additionally, Dr. Haziq's findings related to Plaintiff's upper extremities and the mild nerve conduction study findings

(Tr. 52, 289, 314), along with the minimal objective findings and treatment for her lower back support the ALJ's RFC (Tr. 291, 355-358, 378, 382, 387-388, 402-403, 408-409).

[R. 11 at 10.]  Substantial evidence supports the ALJ's decision.  The Court's judgment is partially informed by the fact that the ultimate determination regarding RFC is reserved for the ALJ.  20 C.F.R. §404.1545(e); *Saylor v. Astrue*, CIV.A.08-19, 2009 WL 310911 (E.D. Ky. Feb. 9, 2009); *White v. Comm'r of Soc. Sec. Admin.*, 5:12CV1637, 2013 WL 4817673 (N.D. Ohio Sept. 10, 2013); 20 C.F.R. § 404.1527 ("Although we consider opinions from medical sources on issues such as … your residual functional capacity …the final responsibility for deciding these issues is reserved to the Commissioner.")

**2**

Dawson's final complaint is that the ALJ improperly considered Dawson's subjective complaints.  [R. 10 at 16-17.]  It is the functional limitations imposed by a condition, not the mere diagnosis that determine disability.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition.").  For this reason, the Commissioner considers statements or reports from the claimant when determining whether a claimant is disabled.  20 C.F.R. § 404.1529.  To determine whether a claimant's statements regarding symptoms, including pain, are credible, ALJ's employ the following two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) (internal citations omitted).  In 20 C.F.R. § 404.1529, the Social Security

Administration informs claimants that, in certain situations, "[b]ecause symptoms, such as pain, are subjective and difficult to quantify," the following factors should guide the analysis of the agency decision makers when determining the severity of an impairment:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

The ALJ cited the correct test and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 52]. The ALJ goes on to provide examples of inconsistencies in the record that call Dawson's credibility into question. First, ALJ Paris notes that Dawson exaggerated her difficulty in school. [Tr. 52.] The ALJ notes that Dawson reported in a 2008 consultative examination that she graduated

from Rockcastle County High School with a "D average" and also provided that she had attempted to obtain her GED but could not pass the test. [Tr. 52; Tr. 398.] ALJ Paris then referred to school records which confirmed that Dawson had received better than the reported "D average." [Tr. 266.] The Court notes that Dawson's report card remarks that she had, at the completion of either her third or final year of high school, a cumulative GPA of 2.56 and that she was ranked "55/185" in her class. [Tr. 266.] ALJ Paris concludes that the aforementioned inconsistency "suggest[s] that the claimant has attempted to exaggerate her difficulty in school" and that, as a result, he gives "less weight to her assertions regarding the severity of her symptoms." [Tr. 52.] Second, ALJ Paris notes that Dawson has a very active social life and that Dawson's "activities of daily living lead the undersigned to give less weight to her assertions." [Tr. 52.] Specifically, ALJ Paris notes that Dawson spends a lot of time with her family and friends and attends church three times per week. He concludes these "are simply not the activities one would expect from a disabled person." [Tr. 52.] The regulation is clear that a claimant's "daily activities" may be considered. 20 C.F.R. § 404.1529. ALJ Paris employs the proper test in his analysis and he directly addresses factors that the agency has bound itself to consider. In so doing, ALJ Paris has conducted a proper credibility determination, which the Court's independent review has found to be reasonable and supported by substantial evidence from the record.

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision finding Dawson not disabled is supported by substantial evidence. Moreover, even if the evidence could also support another conclusion, the ALJ's decision must stand because

the evidence reasonably supports his conclusion. *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

Accordingly, and the Court being sufficiently advised, it is hereby ordered as follows:

(1) Plaintiff's motion for Summary Judgment [R. 10] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [R. 11] is **GRANTED**; and,

(3) **JUDGMENT** in favor of the defendant will be entered contemporaneously herewith.

This 31st day of March, 2014.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**